UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL ARREDONDO,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 4:18-cv-10394
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 14), **GRANT** Defendant's motion for summary judgment

(DE 15), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff, Paul Pernell Arredondo, brings this action under 42 U.S.C. §§

405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying his application for supplemental security

income (SSI) benefits.  This matter is before the United States Magistrate Judge for

a Report and Recommendation on Plaintiff's motion for summary judgment (DE 14), the Commissioner's cross-motion for summary judgment (DE 15), and the administrative record (DE 9).

**A.     Background and Administrative History**

Plaintiff alleges his disability began on September 3, 2009, at the age of 39. (R. at 142.)  In his disability report, he lists several conditions (type 2 diabetes, asthma, hypertension, and neuropathy on feet) that limit his ability to work.  (R. at 172.)  His application was denied in February 2015.  (R. at 66-76, 85-88.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 92-94.)  On November 17, 2016, ALJ Regina Sobrino held a hearing, at which Plaintiff and a vocational expert (VE), Pauline McEachin, testified.  (R. at 26-65.)  On April 5, 2017, ALJ Sobrino issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7-25.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 140-141.)  However, on December 7, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Sobrino's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 1, 2018.  (DE 1.)

**B.     Plaintiff's Medical History**

The administrative record contains approximately 444 pages of medical records, which were available to the ALJ at the time of her April 5, 2017 decision. (R. at 25, 294-737 [Exhibits 1F – 15F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4) (effective Aug. 24, 2012), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 22, 2014, the application date. (R. at 12.)[1] At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, osteoarthritis, asthma, neuropathy, cubital tunnel syndrome, carpal tunnel syndrome, venous insufficiency, hypertension, obesity, and depression. (*Id.*) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 12-13.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

---

[1] It appears that Plaintiff's SSI application was dated October 30, 2014. (*See* R. at 142.)

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a) (effective Aug. 24, 2012); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

3

> . . . to perform light work as defined in 20 CFR 416.967(b), with the following additional limitations: the opportunity to sit or stand alternatively [*i.e., exertional limitations*], provided he is not off task more than 10% of the work period; no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs, crouching, stooping, balancing an [sic] kneeling; no crawling [*i.e., postural limitations*]; frequent handling, fingering, and feeling [*i.e., manipulative limitations*]; no work around hazards such as unprotected elevations or dangerous moving machinery; no exposure to vibration [*i.e., environmental limitations*]; no use of foot or leg controls [*i.e., exertional limitations*]; no concentrated exposure to respiratory irritants; no concentrated exposure to extremes of temperature, humidity, or wetness; no driving as a work duty [*i.e., environmental limitations*]; and simple, routine work not done at a production rate pace (e.g., no assembly line work), with minor changes in the work setting.

(*Id*. at 13-19.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 19.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 20-21.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 22, 2014, the date the application was filed. (*Id*. at 21.)

### D.     **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff identifies a single issue on appeal: Did the ALJ inadequately account for Plaintiff's upper extremity impairments? (DE 14 at 3.) He contends that the ALJ: **(1)** did not adequately account for his *left* upper extremity impairments; and, **(2)** failed to address his therapists' reports as required by SSR 06-03p. (*Id*. at 13-16.) The Commissioner submits that the Commissioner's decision is supported by substantial evidence and is free of harmful legal error. (DE 15 at 1 ¶ 2; *see also* DE 15 at 16-24.)

#### 1. Right upper extremities v. bilateral extremities

Throughout the RFC discussion, the ALJ considered records concerning Plaintiff's upper extremities, albeit not necessarily by provider, such as:

- Consultative examiner (CE) Harold Nims, D.O.'s January 29, 2015 "upper extremities" and "hands" observations, as well as

6

    the bilateral lateral epicondylitis diagnosis, *i.e.*, tennis elbow in both arms (R. at 385-386.)

- Paul M. Telehowski, M.D.'s May 20, 2015 notation that Plaintiff "has had EMGs bilateral upper extremities that have confirmed moderate to severe carpal tunnel and cubital tunnel syndrome." (R. at 468.)

- Plaintiff's June 2, 2015 and October 27, 2015 right-hand surgeries performed by Dr. Telehowski (R. at 16, 458-459, 464-466.)

- Nazem Abdelfattah, M.D.'s November 13, 2015 note: "Patient indicated he has less severe CTS symptoms on left hand." (R. at 550.)

- Candacy George, D.O.'s February 5, 2016 musculoskeletal and extremities examinations (R. at 574.)

- Dr. Abdelfattah's March 17, 2016 neurologic observation that "[m]otor strength was 5/5 in all 4 extremities." (R. at 588.)

- Mouaz Sbei, M.D.'s March 21, 2016 observation that Plaintiff's limbs muscle strength was normal, "including his hands intrinsic muscles[,]" and Plaintiff "ha[d] positive Tinel's sign bilaterally at the wrists." (R. at 483.)

- Dr. Sbei's March 28, 2016 note that "[t]here is electrodiagnostic evidence of bilateral mild median mononeuropathy at the wrist, right greater than left, (carpal tunnel syndrome)[,]" and he "performed bilateral wrist trigger point injection . . . for mild carpal tunnel syndrome." (R. at 482.)

- Dr. Sbei's May 2, 2016 documented "bilateral wrist trigger point injection . . . for mild carpal tunnel syndrome." (R. at 475.)

7

- The September 2016 notes of Muhammad Alghanem, D.O. / Dr. Abdelfattah, which indicate "cranial nerves II-XII grossly intact with normal sensation, reflexes, coordination, muscle strength and tone." (R. at 624.)

- Dr. Sbei's October 3, 2016 notes that: **(a)** Plaintiff had "been able to be functional and perform his activities of daily living without significant difficulties[;]" **(b)** Plaintiff complained "of hands paresthesia, especially at night and with using his hands[;]" and **(c)** Plaintiff underwent "bilateral wrist trigger point injection . . . for mild carpal tunnel syndrome[,]" which Plaintiff "tolerated . . . very well." (R. at 473.)

(R. at 15-18.) Ultimately, the ALJ noted:

> The claimant has been treated with outpatient surgical procedures for carpal tunnel syndrome and cubital tunnel syndrome. The surgeon's treatment records indicate positive response; as noted, the claimant is neurologically intact. He reports persistent carpal tunnel syndrome symptoms, but the condition is described as mild and the treatment since Dr. Telehowski's surgeries has been conservative (consisting of injection therapy and wrist splints that the claimant wears at night). The consultative examiner who evaluated the claimant in 2015 reported that the claimant had intact dexterity and strength of all extremities, including the hands.

(R. at 18.)

Preliminarily, I note Plaintiff's assertion that the CE's January 29, 2015 findings "offer no substantial evidentiary support for the ALJ's findings[,]" because these findings occurred before his condition "worsened to the point where he required two different surgeries . . . ." (DE 14 at 13 n.3.) The ALJ seems to have recognized this, as she ultimately assigned "little weight" to Dr. Nims's opinions that Plaintiff "seems capable of non-strenuous, non-repetitive tasks

without any significant limits on his mobility[,]" and that Plaintiff's ability to perform exertional and postural tasks "appears to be at least mildly impaired . . . ." (R. at 19, 387.) Similarly, the ALJ assigned "little weight" to Eric C. Puestow, M.D.'s January 8, 2016 opinion, because "the claimant's impairments reasonably limit the claimant to a range of light, not medium, exertion work." (R. at 19, 728-737.)

Additionally, Plaintiff claims that "the ALJ failed to note that [P]laintiff had been experiencing bilateral symptoms, but had only had surgery on his right arm[,]" and particularly points to: **(a)** Dr. Telehowski's May 20, 2015 note that Plaintiff would be "scheduled upcoming for both cubital and carpal tunnel release with the side being done first left to his discretion[;]" and, **(b)** Plaintiff's November 17, 2016 testimony that he was "still going through therapy with [the right arm/hand]," so he did not want them touching the left arm/hand until he was "even with" the right arm/hand. (DE 14 at 13-14; R. at 468, 34.)

To the extent Plaintiff argues that the ALJ also should have noted that his "left arm and hand issues had yet to be surgically addressed[,]" the ALJ knew so by his question, "[S]o far have you had any kind of surgery on your left hand?" − to which Plaintiff answered, "No, I won't let them operate yet. I don't want them to." (DE 14 at 14, R. at 34.) The ALJ then asked whether Plaintiff was right or left-handed, and Plaintiff answered, "I'm right-handed. I wanted to get it over

9

with." (R. at 34.) In fact, "'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted)).

Perhaps more importantly, in the absence of a modifier, the RFC limitation of "frequent handling, finger, and feeling" applies to *both* hands. (R. at 13.) And, it is clear from her express citations to the record, as indicated above, that the ALJ crafted the RFC's manipulative limitations with both of Plaintiff's upper extremity problems very much in mind. As the administrative hearing transcript makes clear, the ALJ clearly understood that surgery had only been performed on the right arm/hand. Notwithstanding Plaintiff's argument that "it was not enough to note that [he] had surgery on his right arm . . . [,]" and that "the ALJ should have noted as well that [P]laintiff's left arm and hand issues had yet to be surgically addressed[,]" the Commissioner is correct that "Plaintiff has not explained how discussing the prospect of surgery on his left arm might have changed the ALJ's decision." (DE 14 at 14, DE 15 at 20.) Moreover, the ALJ was not required to "discuss every piece of evidence in the record for h[er] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

### 2. Therapist reports

Plaintiff argues that the ALJ did not comply with SSR 06-03p, which provides guidance on "considering opinions and other evidence from sources who are not 'acceptable medical sources' in disability claims[.]" This rule explains that, as set forth in 20 C.F.R. §§ 404.1527(b) and 416.927(b),[3] the SSA considers "all relevant evidence in the case record when [it] make[s] a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from 'acceptable medical sources,' medical sources who are not 'acceptable medical sources,' and 'non-medical sources' who have seen the individual in their professional capacity." SSR 06-03P, 2006 WL 2329939 at *4 (S.S.A. Aug. 9, 2006). "Other sources" include, but are not limited to, "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists[.]" *Id*. at *2.

### a. Consideration of therapy records

Within the RFC discussion, the ALJ pointed to: **(a)** the fact that Plaintiff has had physical therapy, including a general citation to Exhibit 11F, which contains physical/occupational therapy records from Michigan Extremity Care dated July 2015 through October 2016 (R. at 14, 635-704); **(b)** Dr. Telehowski's July 27,

---

[3] The versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect from August 24, 2012 to March 26, 2017 would apply to Plaintiff's October 2014 application for SSI benefits.

11

2015 recommendation to "continue to be involved in his next six weeks of therapy[,]" which the ALJ interpreted as advice to continue with PT (R. at 16, 461); and, **(c)** Dr. Telehowski's September 28, 2016 thought that Plaintiff "could benefit from a formal course of therapy for ultrasound treatment, range of motion[,]" which the ALJ interpreted as a referral (R. at 18, 454). Thus, Plaintiff is simply incorrect when he states that "[t]he therapy records are noticeably absent from the ALJ's opinion, being *nowhere* mentioned therein." (DE 14 at 15 (emphasis added).) Likewise, the Court is not convinced that the ALJ did not "consider the findings and opinions of the therapists." (DE 14 at 16.)

### b. Consideration of therapists' findings

Plaintiff also makes a reference to the ALJ's alleged failure to account for his therapists' findings and opinions in the RFC. (DE 14 at 15.) In particular, Plaintiff points to: **(a)** the August 31, 2015 upper extremity discharge summary; **(b)** the April 14, 2016 upper extremity discharge summary, which listed restrictions in functional goals (dressing/grooming, household activity, and lifting) and described several remaining deficits; and, **(c)** the October 18, 2016 plan of care, at which Plaintiff demonstrated poor functional grip strength, 9/10 hand pain with attempts of functional use, and slowed fine motor coordination. (DE 14 at 14-15, R. at 640-641, 644-648.) In addition, Plaintiff notes the VE's testimony that a limitation to occasional use of the hands, which means "occurring from very little

up to one-third of the time[,]" *id.*, would have precluded the inspector, bench assembler, and hand packager jobs. (DE 14 at 16, R. at 57, 59.) However, the ALJ assessed an RFC that exertionally limits Plaintiff to light work and manipulatively limits him to "frequent handling, fingering, and feeling[,]" which means "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *6 (S.S.A. 1983). Whatever limitations Plaintiff points to in the April 2016 discharge summaries and/or October 2016 the plan of care (*see* DE 14 at 14-15, 640, 644), it is not clear that these records warrant reducing Plaintiff's manipulative limitations to occasional handling, fingering, and feeling.

"Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–390 (6th Cir. 1999). "[T]here is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). The manipulative limitations assigned by the ALJ appear to be well within her "zone of choice," and the Court may not reweigh the evidence. *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citation omitted).

### F. Conclusion

For the foregoing reasons, Plaintiff has not convinced the Court that the ALJ improperly assessed the RFC's manipulative limitations – a burden that is his to meet. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff not having shown legal error that may upend the ALJ's decision, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 15), and **AFFIRM** the Commissioner's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 17, 2019
                                     s/*Anthony P. Patti*
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 17, 2019, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager for the
                                     Honorable Anthony P. Patti